STATE OF IOWA, Appellee, v. JOHN T. STEWART, Appellant.

**HOMICIDE: Self-defense—Withdrawal of Testimony.** A motion to
1     withdraw from the jury the evidence of two separate assaults upon the deceased, on the claim that the first assault was justifiably in self-defense and that the second assault was made at a time when the deceased was dead, is very properly refused when the record presents a jury question on both issues of fact.

**CRIMINAL LAW: Parties to Offense—Accomplices.** An aider and
2     abettor in a felonious homicide is deemed a principal. Evidence held to justify an instruction accordingly.

**HOMICIDE: Instructions—Whether Life Was Extinct When Assault**
·3   **Made.** The court, in instructing as to two separate assaults upon the deceased, does not commit reversible error in omitting to state to the jury that they must find that the deceased was *alive* at the time of the second assault.

**HOMICIDE: Excessive Sentence.** Record reviewed, and held that a
4     sentence of 25 years for murder in the second degree was not excessive.

*Appeal from Montgomery District Court.*—E. B. WOODRUFF,
Judge.

APRIL 1, 1924.

REHEARING DENIED SEPTEMBER 26, 1924.

JOHN T. STEWART was convicted in the court below of murder in the second degree, and appeals.—*Affirmed.*

*Tinley, Mitchell, Ross & Mitchell,* for appellant.

*Ben J. Gibson,* Attorney-general, *Floyd E. Billings,* County Attorney, and *Paul W. Richards,* for appellee.

STEVENS, J.—The appellant, John T. Stewart, and George Austin, a farm hand in his employ, were separately indicted by the grand jury of Montgomery County for the murder of Albert Girardi, which occurred January 22, 1923. The facts upon which the prosecution was based are disclosed, with little dispute, by the written confession of appellant, and his own and Austin's testimony upon the trial. These facts are, in substance, as follows:

Girardi was engaged in the illicit sale of intoxicating liquors, and on the afternoon of the tragedy, appeared at the residence of appellant, near Red Oak, in Montgomery County, with five one-gallon jugs and a five-gallon keg of whisky concealed in the Dodge touring car which he was driving. The five one-gallon jugs were in a burlap sack; one jug was removed and, accompanied by appellant, taken to the house by Girardi. Austin, who was at the home of a near-by neighbor, was summoned by telephone. After drinking some of the contents of the jug, the three men entered into an agreement for the sale and purchase of the whisky. Appellant and Austin agreed to pay Girardi $100 for the entire quantity. They returned to the automobile, and the burlap sack containing the four remaining jugs of whisky was removed from the car by Girardi, as was also the five-gallon keg. Appellant took the sack containing the five one-gallon jugs to the house. Austin went with him. While there, appellant made out a check for $100, payable to Austin, who indorsed it for delivery to Girardi. The two men again

returned to the automobile, and appellant picked up the five-gallon keg and carried it to the granary, which was distant about seventy-five steps, where he covered it up in an oat bin. In the meantime, Austin tendered the check to Girardi, who declined to receive it, and insisted upon payment for the liquor in cash. Austin protested that they did not have the amount on hand, but offered to go to Red Oak with Girardi, have the check cashed, and pay him in money. This Girardi refused to do. Austin then told him that, if he did not want the check, he could take back the liquor. Girardi ordered him to return it to the car. This Austin refused to do. An altercation quickly followed, in which blows were struck by both Austin and appellant. Austin testified that Girardi stooped to pick up a heavy iron kingbolt, and that he (Austin) pushed him in such a way that he picked it up with his left hand. Austin immediately wrested it from him, and in the scuffle struck him "a backhanded lick in the face" with the kingbolt. About this time, appellant came out of the granary, saw the scuffle, hurried to where the men were, and immediately struck Girardi a violent blow with his fist on the left jaw. His justification for this blow was that he saw Girardi reaching for his pocket, as if to get his gun. The effect of the blow was to turn him partly around, and to cause him to fall upon his hands and knees. While he was in that position, according to the testimony of Austin, the heavy sheep-lined duck coat which Girardi was wearing was turned up on his back, so that he saw Girardi reach to his hip pocket, place his hand upon his gun, and attempt to remove it. Appellant claims that he did not see the gun, but saw the movement of Girardi's hand toward his pocket. Appellant then said to Austin: "You will have to hurry; he's getting his gun." At that time, Girardi was on his hands and knees, facing slightly to the southeast, with both Austin and appellant standing in his rear, a little to his left. While he was in this position, Austin struck him a blow with the kingbolt on the right side of the head, knocking him face forward, flat upon the ground. Possibly two blows were struck,—Austin was not sure on this point. The body was turned over on its back, and an effort made, by manipulating the arms, to resuscitate it. The attempt failing, a question arose

between them as to what to do with the body. Appellant suggested that they put it in the henhouse, stating that it would never do for his mother to know that a man was killed on the place. After a few minutes' discussion, the body was deposited in the front part of the Dodge touring car. Appellant got in the front seat, and Austin lay down between the two seats. Appellant drove the car westward for about a mile and a quarter, when the assault upon Girardi was renewed. According to the statement signed by appellant, he saw Girardi attempting to rise, and immediately said to Austin: "For God's sake, hit him again; he is raising up." Immediately Austin rose from his position between the seats of the automobile and struck Girardi another blow on the right side of the head. The two men a little later changed positions, Austin taking the front seat, and appellant the rear. After continuing a short distance west, Austin turned the car north, and, driving upon a highway little used by the public for about a quarter of a mile, stopped at the side of the highway near a bridge. A log was placed under the automobile, the gasoline was drained from the carburetor, and the car was set on fire. The burning car was discovered a little later in the evening by a passer-by, who summoned help from the neighborhood. When those who were summoned arrived, the body of Girardi, crumpled up in the front part of the car, was discovered. There was a large pool of blood on the footboard of the automobile, and it had run out under the door onto the running board. The body was immediately removed from the car and placed upon the ground.

The only witnesses who testified concerning the tragedy were appellant and Austin. When the two men were arraigned, Austin pleaded guilty to the charge of murder in the first degree, and was sentenced to imprisonment for life in the penitentiary. Appellant entered a plea of "not guilty," on which plea a trial was had, resulting in his conviction of murder in the second degree and sentence to the penitentiary for a term of twenty-five years.

I. It is conceded in the evidence that Girardi died from the effect of the wounds inflicted upon his head by Austin in the manner stated, but there is a conflict in the views of the

1. HOMICIDE:
self-defense:
withdrawal of
testimony.

State and the defense as to just when the fatal blow was struck,—that is, whether at the house or in the automobile. This is material in several aspects of the case, as will presently appear. The defense urged upon the merits was that the life of Girardi was taken by Austin in self-defense.

At the conclusion of the State's evidence, a motion was made by counsel for appellant, which was renewed at the close of all the evidence, to withdraw from the consideration of the jury all of the evidence relating to what occurred at the house, and in a separate paragraph, all that occurred in the automobile, upon the ground that the blow or blows struck in the first instance were in self-defense, and that, at the time the assault was renewed in the automobile, Girardi was dead. The motion was overruled.

First, as to the plea of self-defense: We have already pointed out the relative position of the three men at the time the first blow with the kingbolt was struck by Austin. Girardi was on his hands and knees, with the two accused men standing near by in his rear. If, as claimed by Austin, he was, immediately before being struck, attempting to remove a pistol from his right hip pocket, he was on his knees and one hand. A 32-caliber automatic revolver was removed from Girardi's right coat pocket, shortly after his body was taken from the automobile, and laid on the ground by the side of the highway. The transfer of the pistol from his right hip pocket to his coat pocket is not accounted for. Austin testified that he did not remove it, and appellant said that he saw no gun at any time. If the pistol was in the right coat pocket at the time of the affray at the house, it would have been impossible for Girardi to have had his hand on it or to have readily got hold of it. The coat was raised and drawn over his back, so that the pistol was not near his right hand. Both of the witnesses testified that they had seen a gun similar to the one taken from his coat pocket in his possession on a previous visit to the Stewart place, and they knew that he habitually went armed.

The taking of a human life is excusable on the ground of self-defense only when it is, or reasonably appears to the person

assailed to be, the only means of saving his life or of preventing the infliction upon him of some great bodily injury. He is not required to draw nice calculations from appearances; but, to justify the taking of life, there must be such appearance of an impending danger as that this reasonably seems to be the only means of preventing the threatened injury or death. The three men were not far from the same age and weight. At the time the first blow was struck, Girardi was on the ground, in the position described. It being conceded that he was making some effort to get his gun, the jury may well have found that he was otherwise wholly in the power of the two men, and that there was no justification for the assault made upon him with a deadly weapon. It is not claimed that he succeeded in doing anything more than place his hand upon his pistol, which, on account of the position he was in, could not have been removed without difficulty. Whether the act of striking Girardi with a deadly weapon at this time under the circumstances disclosed is excusable on the ground of self-defense was clearly a question of fact for the jury, and not a question of law for the court.

The cause of Girardi's death is conceded. The State was not bound to show just when it occurred, or what particular blow, if any, was the fatal one. This was material only because of its bearing upon other issues, such as motive, the alleged intoxication of appellant, and the right of self-defense. Manifestly, if death ensued before the assault in the automobile was committed, then what there transpired did not constitute any offense charged in the indictment. Austin testified that he saw no movement of Girardi's body after it was placed in the automobile, either before or after the blow was struck, and gave it as his opinion that life was already extinct. Subsequent investigation revealed a small quantity of blood on the ground, on some chips and cobs near where the body lay after it was struck by Austin on the Stewart premises. All of the witnesses who were present at the time or shortly after the body was removed from the automobile testified that they saw a large quantity of blood on the footboard of the automobile and upon the running board. There was blood upon the face of the deceased, partially dried, and Austin testified that his coat was saturated when Austin

first picked him up at the house. The expert testimony showed that the heart and arteries were entirely emptied of blood, and that this occurred before death. As to what occurred in the automobile, appellant claims that his mind is a blank. The facts recited in the statement signed by him about a week after the tragedy are identical on this point with the testimony of Austin. It is true that the confession then signed by him was prepared from the joint statements of appellant and Austin, and that the latter, to some extent, refreshed the recollection of the former as it was being prepared. There was no way by which the court could determine, as a matter of law, when death ensued. Austin testified that he did not know whether Girardi was dead when placed in the automobile or not. The efforts made to resuscitate him failed. He placed his hand on Girardi's heart and lungs, and could detect no signs of breathing or movement of the heart. The time that elapsed between the separate assaults did not exceed thirty or thirty-five minutes. The physician who arrived shortly after the body was discovered testified that the head of the deceased was still warm when he placed his hand upon it. Nothing occurred at the time the assault was committed in the automobile to excuse it on the ground of self-defense. Girardi, if alive, was prostrate and helpless. The latter assault was inexcusable, upon any legal theory, and revealed a state of mind hardly consonant with the attitude assumed by the appellant in this case.

Before passing finally from the consideration of these questions, we desire to refer briefly to other important evidence in the case. Girardi had $82 in the form of bills in a bill book in his coat pocket. This Austin removed, shortly after the final assault was committed, in the automobile, at the suggestion of appellant. Later in the evening, the two men divided the money equally between them. The assaults upon Girardi, as shown by the condition of his skull, were very violent. The right side of the skull was crushed for an area of nearly three inches square, and there were seven cuts upon the head. After the accused set fire to the automobile and started to return home across the fields, they deposited the kingbolt near a hedge fence, where it was later found.

When the sheriff and other officers appeared on the premises on the evening of the tragedy, appellant admitted that Girardi had been at his place that day, but denied all knowledge of his death. It is argued that, as there was a cover on the automobile and the deceased's coat and cap were over his head, the fatal blow could not then have been struck by Austin. This, of course, was a question for the jury. As stated, appellant's signed confession corroborates the testimony of Austin as to every detail of what occurred after the men left the Stewart premises. Appellant testified that he remembered only a few minor matters after they left the house. He denied all recollection of the assault or the use of the language attributed to him in the automobile, denied that he remembered Austin's taking the money, or its division between them and what he did with his share. The credibility of his testimony was for the jury. There was much to discredit his claim that he did not know what occurred in the automobile and later. He was clear in his recollection of every detail that occurred on his premises. He even described the backhand blow with which Austin struck Girardi as a mere "flipping" of the kingbolt. At his suggestion, the body was dragged into the automobile under the steering wheel, because he was afraid someone at a near-by neighbor's would see them from the other side. His confession is complete as to all of the details. He further testified that he remembered splitting some wood after he returned home, but did not recall eating supper or going to bed. The sheriff testified that, when he and the other officers called, appellant recognized him, and he saw nothing out of the ordinary. Appellant further stated in his confession that, when the officers left, Austin, his wife, and himself went with his car to where Girardi's car was burned.

The further claim is made that he was intoxicated. The evidence shows that he drank fully of the liquor. Austin testified that in his opinion Stewart did not know what he was doing. We need go no further into the details of the testimony. It seems to us clear that the ruling of the court upon the motion was correct.

II. Thus far we have proceeded on the assumption that, if the taking of the life of Girardi by Austin was not excusable on

the ground of self-defense, appellant so aided and abetted him

2. CRIMINAL LAW:
parties to of-
fense: accom-
plices.

in the commission of the crime that he was prop-
erly indicted under the statute and prosecuted
as a principal, and that the degrees of homicide
were properly submitted to the jury by the court. The court
on this point in part instructed the jury:

"So that, in this case, it is not necessary that the State
show that the actual killing of the said Girardi was done by this
defendant with his own hands. If the evidence shows, beyond
a reasonable doubt, that the said Girardi was killed substantially
as charged in the indictment, and that this defendant aided, en-
couraged, assisted, and abetted another, to wit, the said Austin,
then, under the statute, he is guilty of the offense charged or
included in the indictment, the same as if he had done the killing
with his own hand."

This instruction was excepted to on the ground that the
evidence showed that appellant struck Girardi but once, and
that with his naked fist; that it did not show that he intended
to inflict a more serious injury upon him than could be accom-
plished with his fist; and that, under such circumstances, it was
error for the court to instruct the jury that if he aided, encour-
aged, assisted, and abetted Austin to commit the crime, then,
under the statute, he was guilty of the offense charged, the same
as though he had done the killing with his own hands.

It may be conceded that the guilt of one on trial for aiding
and abetting another in the commission of a crime, such as mur-
der or manslaughter, is not necessarily guilty of the same degree
of crime as the one who actually inflicted the fatal injury. It
is true that death did not result from anything actually done by
appellant. He did, however, participate in the assault upon
Girardi, encouraged Austin to strike him while he was on the
ground, upon his hands and knees, directed the assault to be
renewed in the automobile and the money to be taken from his
body; and in fact every act of Austin's after appellant returned
from the granary was, apparently, prompted largely by the sug-
gestion, and had the encouragement, of appellant. It is true, as
stated, that appellant relies to a considerable extent upon a

faulty memory, but, in addition to what we have said above, we quote the following from his signed confession:

"I turned the car around, and drove out of my place and went west. After we had driven west past Spangenberg's house, Albert Girardi started to raise up, and I said to George Austin, 'For God's sake hit him again; he is raising up.' And George hit him with the kingbolt. Then I said to George Austin, 'Have you got his money?' and I saw George Austin reach into Albert Girardi's pocket and take out his bill book and take the money and return the bill book to Albert Girardi's pocket. There was $82."

The court, in a preceding paragraph of its charge, instructed the jury that:

"The said George Austin is not on trial in this case, but it is this defendant who is now on trial before you, and if you find that he is guilty, it is the degree of his guilt that you are to determine, and not the degree of guilt of the said George Austin."

The instruction complained of is not open to the objection lodged against it.

III. The court in one of its instructions said:

"The burden then is upon the State to show by the evidence and beyond a reasonable doubt that the said Albert Girardi came to his death under such circumstances as made the act of killing him criminal, *unless it appears that such act of killing was done in self-defense.*"

The words italicized are criticized by counsel. There is a possibility that, if the language of this instruction had not been made plain in other portions of the charge, it might have confused the jury; but when the entire instruction is considered and read in connection with the charge as a whole, the criticism would seem to be without merit.

IV. In the paragraph of the court's charge relating to the assault committed in the automobile, the court did not specifically and in terms tell the jury that, to constitute any one of

3. HOMICIDE: in-
structions:
whether life
was extinct
when assault
made.

the crimes charged in the indictment, it was necessary for the State to show beyond a reasonable doubt that Girardi was alive at that time. The criticism is exceedingly technical, and the instruction as a whole was sufficiently explicit on the point suggested. As stated, the killing was conceded, and the material question in the case was whether it was justifiable upon the ground of self-defense. If death ensued at the Stewart premises, then, as a matter of course, no conviction could be had for the assault committed in the automobile. The theory of appellant as to this transaction was fully covered by the court's instructions, and the jury could not have been misled by anything stated therein.

V. Complaint is made of the admission in evidence of Exhibit 9, which is the confession signed and sworn to by appellant. The ground of the objection to the admissibility of this instrument was that it was obtained by force and duress. We shall not set out the evidence on this point. The court submitted the question to the jury as to whether or not it was the voluntary act of appellant. There was some evidence that Austin was abused by the officers, but practically none that Stewart's confession was not voluntary. Its admission was proper.

Complaint is also made of some of the court's rulings on objections to testimony relating to the method by which the alleged confession was secured. Whether erroneous or not, the exclusion of this evidence by the court could not in any way have affected the result.

VI. It is also urged that the court committed error in refusing to give Instruction No. 3, requested by appellant. We shall not copy this instruction, which related to the assault in the automobile. The charge of the court on this point was full and complete, and the refusal to give the requested instruction could not have been prejudicial.

VII. The remaining matter to which we deem it necessary to refer is the contention of appellant that the sentence imposed upon him of imprisonment in the penitentiary at Fort Madison

4. HOMICIDE: ex-
cessive sen-
tence.

for a term of twenty-five years is excessive and unreasonable. Whatever merit there might be in this contention if all of the facts concerning the tragedy were limited to what took place on appellant's premises, is largely overcome by what followed. The assault in the automobile, the larceny of the money, the attempt to destroy the car and the body in the manner outlined, all reflect seriously upon the motives and intentions of the two men. The denial of appellant that he consciously took part in the affray after he left his own premises is, we think, discredited by much of the testimony, and in any event this was a question of fact for the jury. What may have been the effect upon appellant's mind of the quantity of liquor consumed by him or the sudden realization that the life of a fellow man had been taken under the circumstances disclosed and claimed by him, no one can positively say. If, however, the final fatal blow was struck in the automobile, as appellant described the scene in his signed confession, and as appears from Austin's testimony, there was nothing to mitigate or excuse the offense committed at that time. The circumstances already narrated as to the presence of blood upon the automobile tend strongly to indicate that death ensued after the last assault was committed. The conduct of the two men as revealed by their own testimony was not consistent with the claims they now assert. The case must be determined upon the record as a whole, and not alone upon the positive testimony of these accomplices. The court carefully guarded the rights of appellant at every stage of the trial. The instructions were full, ample, and complete, and fully presented the theory of appellant as to what occurred, both as to the right of self-defense and if the final assault was committed after death intervened. The instructions were not unfair to appellant. So far as the record shows, he had a fair trial.

Other matters are discussed by counsel, but they do not involve grounds for reversal. We have read and reread the record with the care the importance of the case demands. Possibly we have omitted to recall some of the circumstances favorable to appellant, but nothing of controlling importance has been overlooked. The case presents no question of law not fully

settled by many decisions of this court. The fact questions were for the jury. We find no reversible error in the record, and the judgment below is—*Affirmed.*

ARTHUR, C. J., PRESTON and VERMILION, JJ., concur.